Hammond *v.* Beasley.

Wm. J. Hammond *v.* Wm. M. Beasley, *et al.*

1. Guardian's Bond. *New surety signing old bond.* Under the provisions of the Code regulating the discharge of the surety of a guardian from further liability on the guardian's bond, the new security to be approved by the court may be given by the new surety signing the old bond.

2. Chancery Pleadings and Practice. *Guardian settlement.* If, upon a bill filed by a ward, after coming of age, against his guardian and the sureties of the guardian bond for an account, alleging various breaches of the bond, the court make a general reference covering all breaches, the omission of the clerk to report upon any particular breach contended for in the pleadings and proof, would be a proper ground of exception to the report; and if the complainant failed to raise the point by exception, or in any other way, and in the meantime claim and obtain the benefit of a suit brought by the guardian to cover the matter of the breach, he will be held to have waived so much of the relief sought.

3. Same. *Same. Guardian relieved. When.* A guardian will be relieved from the charge of the notes of his predecessor which turn out not to have been intended as notes, but informal receipts of the assets of the ward.

4. Same. *Same. Credits.* Credits may be allowed a guardian for a series of years not in excess of the income of the ward for those years, although the credits of a particular year may exceed the income of that year; and the credits given in the regular settlements of the county court are *prima facie* good without producing the *vouchers,* if not surcharged or falsified by pleadings or proof.

FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. Fleming, Ch.

T. M. Jones for complainant.

W. H, McCullum and A. J. Abernathy for defendants.

COOPER, J., delivered the opinion of the court.

In the year 1860, James Hammond died intestate in Giles county, and in December of that year, James White and Thos. H. Noblett were appointed and qualified as administrators of his estate. During the same month E. A. Beasley was appointed guardian of W. J. Hammond and Mary Jane Hammond, two children of the deceased, and qualified by giving bond, with Wm. M. Beasley and Thos. S. Fogg as his sureties, for the faithful performance of his duties. The administrators of the estate of James Hammond, in the course of the administration, made distribution of assets to the distributees, but instead of taking receipts with refunding bonds, they adopted the plan of taking the notes of the distributees for the payments, so as to be in a condition to sue for and recover back overpayments. During the years 1861 and 1862, the administrators made various payments to E. A. Beasley for his wards, and took his notes as guardian therefor, payable to them at one day. E. A. Beasley died, in September, 1863, and Thos. S. Fogg was appointed and qualified as administrator of his estate, the insolvency of which he suggested to the county court, on February 26, 1867. On April 9, 1866, Wm. M. Beasley was appointed as guardian of W. J. Hammond, and qualified by giving bond with James D. Anthony, M. M. Mitchell and Jos. S. Edmondson as his sureties. On February 3, 1868, the guardian renewed his bond, with M. M. Mitchell and Thos. S. Fogg as sureties. In May, 1868, Mitchell applied to

the county court by petition to be released as such surety, and on June 1, 1868, in compliance with a rule made upon him, Wm. M. Beasley came forward with J. P. C. Reed as a surety in place of Mitchell, who signed the old bond accordingly, and it was accepted by the county court, and Mitchell released from further liability, by formal order of the court entered on the minutes. In the meantime, White and Noblett, as administrators of James Hammond, when they came to make their settlements, found that the county court clerk objected to receive the notes of E. A. Beasley as receipts, and they induced Wm. M. Beasley, as guardian of W. J. Hammond, to receive four of the notes of his predecessor in office, and give them a receipt therefor. These notes seem to have been handed to Wm. M. Beasley on May 10, 1866, and he charged himself with their amount of $4,118.68, and interest, in his settlements made with the county court clerk, on January 30, 1868, August 24, 1870, and August 24, 1871, by the last of which the balance found against him was $5,938.84.

On September 10, 1870, Wm. M. Beasley, as guardian of W. J. Hammond, filed his bill against Thos. S. Fogg, as administrator of E. A. Beasley, deceased, and individually, and James White and Thos. H. Noblett as administrators of James Hammond, deceased. The object of this bill was to relieve the complainant from the charge of the $4,118.68, with interest, upon the ground that the instruments were not in reality the notes of E. A. Beasley, but only informal vouchers for the money paid over to him as guardian, by the

administrators of James Hammond, deceased. The bill
stated so many of the foregoing facts as bore upon
this point, and asked for a settlement with Thos. S.
Fogg, as administrator of E. A. Beasley of the guar-
dianship of the latter as guardian of W. J. Hammond,
and for a recovery of the *pro rata* of the sum found
out of the estate of E. A. Beasley, which was still
being administered as insolvent. It also asked that
the defendant, Fogg, and the complainant, as the sure-
ties of E. A. Beasley on his bond as guardian, be
held liable for any of the recovery not realized out
of the estate of E. A. Beasley. Such proceedings
were had in the cause that on March 25, 1871, the
court decreed that the notes of E. A. Beasley were
intended by the parties as evidence of the receipt of
so much money paid to him, as guardian, by the ad-
ministrators of James Hammond's estate, and also as
refunding bonds in the event he was overpaid; that
the complainant as guardian, recover from Thos. S.
Fogg as administrator of E. A. Beasley, the sum of
$5,421.84, the amount found to be due from E. A.
Beasley's estate to his ward W. J. Hammond, to be
filed for its *pro rata* in the insolvent suit; and that
the balance of debt, after receiving the *pro rata*, should
be paid, one-half by the complainant and the other
half by Thos. S. Fogg, as sureties on the guardian's
bond. On March 5, 1874, W. J. Hammond, who
came of age on August 5, 1871, was permitted by
the court to become sole complainant in the cause and
substituted to the rights of Wm. M. Beasley, as guar-
dian under the proceedings and former decree, and it

was referred to the master to ascertain and report what had been realized in the former decree, and the balance due. At the same term, the master's report, showing that $1,843.42 had been realized from E. A. Beasley's estate, and paid to Hammond's attorneys and assignee, was confirmed without objection, and a decree rendered in favor of Hammond against Wm. M. Beasley and Thos. S. Fogg, "jointly and severally," for $4,529.93, and unadjudged costs, the balance unpaid of the recovery against E. A. Beasley's estate for the money due his ward, W. J. Hammond.

On September 16, 1871, Wm. M. Beasley filed his bill against his ward, W. J. Hammond, to have the same relief against the notes of E. A. Beasley, which he had already obtained against E. A. Beasley's administrator, and have his settlements with the clerk of the county court corrected accordingly, he having charged himself with those notes under a mistake of fact. He stated the proceedings in the previous case down to the decree of March 25, 1871. On December 26, 1871, the bill now before us was filed by W. J. Hammond against Wm. M. Beasley and Thos. S. Fogg, as administrator of E. A. Beasley and individually, ·J. P. C. Reed and M. M. Mitchell. This bill mentions the previous bill of Wm. M. Beasley of September 16, 1871, craving leave to refer to the papers therein, and sought at first to be treated as a cross-bill thereto. But it was afterward filed as an original bill against all parties. The bill stated the facts as hereinbefore detailed, and charges that Wm. M. Beasley has not faithfully executed his guardianship, and

calls for an account. It insists upon the liability of Wm. M. Beasley for the $4,118 with which he charged himself in his settlements with the county court, and claims, if he is not liable therefor, that he and his sureties are liable on the guardian bond for the failure of Wm., M. Beasley, as guardian, to bring suit against Thos. S. Fogg as surety on E. A. Beasley's bond, and to account for his share of the loss. One prayer of the bill is that these parties be held liable accordingly, and, if necessary to a settlement of the amount of Wm. M. Beasley as guardian, that an account be taken with said Fogg as administrator, etc.

The court, upon the pleadings and proof, made a reference to the clerk and master to take and state an account with Wm. M. Beasley, as guardian. And on final hearing the chancellor held that the proceedings in the county court had the effect to release Mitchell as surety from any further liability on the guardian bond of Wm. M. Beasley, and to make J. P. C. Reed and Thos. S. Fogg primarily liable for all previous breaches of the bond, if any. He held that Wm. M. Beasley was not chargeable with the notes of E. A. Beasley, but only with the money collected thereon by him from E. A. Beasley's estate. He found a balance due to the complainant from Wm. M. Beasley, as guardian, of $1,716.17, and he rendered a decree in favor of complainant against Beasley, and Fogg and Reed as his sureties, for this amount and the costs. The record shows that this decree was paid by Reed on December 23, 1873. No appeal was taken from this decree, but the record was, on

October 1, 1875, filed by complainant for a writ of error.

The Referees have reported in favor of affirming the chancellor's decree with costs. The complainant excepts.

The first exception is that the Referees erred in holding that Mitchell was released by the proceedings in the county court from liability on the guardian bond. The ground of objection is that Reed, the new security, signed the last preceding bond of the guardian, when, it is insisted, the bond should have been a new bond. The proceeding in this case, as shown by the record, was under new Code, section 4421, by "petition in writing," and notice. In such a case, as provided by section 4422, the court may compel the principal to give other sufficient security, to be approved by the court. Section 4424 is: "Upon public or private application of any surety, if the principal consents to give a new bond, with satisfactory security, it may be taken without further proceedings, with the same effect as if executed upon order." This section, it will be noticed, uses the words "new bond," upon which the argument of the learned counsel is rested, but the next section, 4425, says: "On the execution of the additional bond as required, or the qualification of a successor, the applicant security is exonerated from all liability accruing subsequently." Obviously the words, giving "other sufficient security," "new bond," or "additional bond," are merely different modes of expressing the same idea, that there must be new security, to be approved

by the court, in place of the old security.   And the
simple question is, whether that security may be ap-
proved by the court if given on the existing bond,
or requires a separate instrument.   The record and
the bond or bonds form one whole under the statute,
and there is not the least reason why the surety, so
far as his liability is concerned, should not execute the
old bond.   It thereby becomes a "new bond" as to
him.   And the statute saves the liability of all the
other sureties, notwithstanding the change of the con-
tract, whether the surety sign with them or separately.

The second exception is that the Referees erred in
not holding Mitchell liable, even if released by the
proceedings in the future, for all monies which the
guardian received, or ought to have received, prior to
that time.   The chancellor held, as we have seen,
and so have the Referees in effect, that Fogg and
Reed were primarily liable for all breaches of the
guardian bond before the release of Mitchell, if any.
And it appears that the recovery of the complainant
for all breaches allowed has been fully paid.   Unless,
therefore, it should be found that the complainant is
entitled to a larger recovery and for breaches of the
bond occurring before the release, the point becomes
unimportant.   Of course, the mere receipt of money
before the release would not be a breach of the bond.
It must be shown that the money was misappropriated,
and there is no proof to that effect in this record.
The bill does apparently seek to charge the guardian
with a breach of duty in not suing Fogg as surety
on E. A. Beasley's bond at an earlier date.   But this
        40—VOL. 15.

part of the bill has been abandoned in the progress of the cause, perhaps because the complainant was content with the guardian's proceedings in the suit to which he made himself complainant when he came of age, and took the benefit of the decrees rendered therein. The chancellor was not asked directly, or by exception to the master's report, to pass upon that part of the bill. The order of reference was broad enough to cover any breach of the guardian's bond, and the failure of the clerk to report upon a particular breach would have been a proper ground of exception. And the question being one of diligence and good faith on the part of the guardian, in the matter under consideration, it was, under the peculiar circumstances of the case, the duty of the complainant to have had the matter directly acted on.

The third exception is to the refusal of the Referees to hold the guardian liable for the E. A. Beasley notes. But the proof clearly shows that these notes were really intended as receipts of so much money, put in such a form as also to operate as refunding bonds. The administrators of James Hammond could not have recovered judgment upon them except to the extent of an overpayment, and could not, of course, long after the maturity of the notes, transfer by their assignment any higher right to the new guardian. They were received under a plain mistake of fact, that they were binding as notes.

The next exception is that the Referees erred in holding that the guardian, without the sanction of the chancery court, could exceed the income of his ward's

·estate. The credits allowed upon the master's report do exceed the income of the funds charged, although it is otherwise in the settlements with the county court, where the guardian is charged with the Beasley notes. But we find, upon examination, that the amount with which the guardian is charged by agreement, what he received on the Beasley notes, and what was recovered on the decree obtained by the guardian against Beasley's estate will exceed $5,000, which would be increased several hundred dollars by the annual interest on the first two items. The disbursements allowed for five years are a fraction under $1,500. The excess of disbursements in one year may be equalized out of the profits of other years: New Code, section 3405. The disbursements are, therefore, not in excess of the interest on .the realized assets. Besides, the complainant does not by his bill or by the proof undertake to surcharge and falsify the credits, or any one of them. The settlements in the county ·court are by law to be taken as *prima facie* correct: New Code, section 4535. And this meets the last exception, the absence of vouchers for credits.

Confirm report, and affirm the chancellor's decree, with the costs of this court against the complainant.